**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | ) | CASE NO. 5:13-cv-00795 |
| OPPORTUNITY COMMISSION | ) | |
| Philadelphia District Office | ) | JUDGE SARA LIOI |
| 801 Market Street, Penthouse Ste. 1300 | ) | |
| Philadelphia, Pennsylvania 19107 | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT IN INTERVENTION** |
| | ) | **(Jury Demand Endorsed Herein)** |
| and | ) | |
| | ) | |
| BARBARA M. WELLS, as Guardian of | ) | |
| Jamie M. Wells, an Incompetent | ) | |
| 1212 Steve Drive | ) | (Title VII Hostile Work Environment, |
| Akron, Ohio 44319 | ) | Gender Discrimination under R.C. 4112, |
| | ) | Failure to Make Reasonable Accommodation |
| and | ) | in Violation of the ADA, Harassment and |
| | ) | Hostile Work Environment in Violation of the |
| JAMIE M. WELLS | ) | ADA, Disparate Treatment in Violation of the |
| 1212 Steve Drive | ) | ADA, Disability Discrimination under R.C. |
| Akron, Ohio 44319 | ) | 4112, Retaliation under Title VII, Retaliation |
| | ) | under the ADA, Retaliation under R.C. 4112, |
| Intervenors-Plaintiffs, | ) | Wrongful Termination, Assault, Battery, |
| v. | ) | Negligent Hire, Negligent Supervision and |
| | ) | Retention, Negligence, Breach of Fiduciary |
| WAL-MART STORES EAST, L.P. | ) | Duty, Intentional Infliction of Emotional |
| c/o Statutory Agent | ) | Distress, Respondeat Superior) |
| CT Corporation System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TAMMY SPRADLIN | ) | |
| c/o Statutory Agent | ) | |
| CT Corporation System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| (In Her Individual and Official Capacities) | ) | |
| | ) | |

and )
 )
MIKE SMITH )
c/o Statutory Agent )
CT Corporation System )
1300 East 9th Street )
Cleveland, Ohio 44114 )
(In His Individual and Official Capacities) )
 )
and )
 )
CINDY WENHART )
c/o Statutory Agent )
CT Corporation System )
1300 East 9th Street )
Cleveland, Ohio 44114 )
 (In Her Individual and Official )
Capacities) )
 )
and )
 )
FRANCIS BENNY CAMERON )
2697 Chelsea Drive )
Akron, OH 44312 )
(In His Individual and Official Capacities) )
 )
and )
 )
JOHN DOE )
c/o Statutory Agent )
CT Corporation System )
1300 East 9th Street )
Cleveland, Ohio 44114 )
 )
and )
 )
JANE DOE )
c/o Statutory Agent )
CT Corporation System )
1300 East 9th Street )
Cleveland, Ohio 44114 )
 )
          Defendants. )

2

NOW COME the Intervenors-Plaintiffs, Barbara M. Wells, as Guardian of Jamie M. Wells, and Jamie M. Wells, an Incompetent, by and through the undersigned counsel, and for their Complaint in Intervention in the above captioned action states to this Honorable Court as follows:

## PARTIES

1. Intervenor-Plaintiff, Barbara M. Wells ("B. Wells"), is a U.S. citizen residing in Summit County, Ohio. B. Wells has been duly appointed the Guardian of Intervenor-Plaintiff Jamie M. Wells, an Incompetent, being Summit County Probate Court Number 2011 GA00134; Judge R.R. Denny Clunk presiding.

2. Intervenor-Plaintiff, Jamie M. Wells ("J. Wells"), is a U.S. citizen residing in Summit County, Ohio. J. Wells was an employee of Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") within the meaning of 42 U.S.C. § 2000e(f) from June 1999 until January 7, 2011, as an "Associate."

3. At all relevant times, Defendant Wal-Mart is a Delaware corporation authorized to conduct business in the State of Ohio. Defendant does business at 2887 South Arlington Road, Akron, Ohio 44312. As a corporation doing business in the State of Ohio, Wal-Mart is a citizen of Ohio.

4. At all relevant times, Defendant Wal-Mart has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e(b), (g) and (h).

5. At all relevant times, Defendant Wal-Mart has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the Americans

3

with Disabilities Act of 1990 ("ADA"), as amended,, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

6.  At all relevant times, Defendant Wal-Mart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.  During all relevant times herein, Defendant, Tammy Spradlin ("Spradlin"), was an employee and supervisor of Defendant Wal-Mart, whose address was, and is, 2887 South Arlington Road, Akron, Ohio 44312.

8.  During all relevant times herein, Defendant, Mike Smith ("Smith"), was an employee and supervisor of Defendant Wal-Mart, whose address was, and is, 2887 South Arlington Road, Akron, Ohio 44312.

9.  During all relevant times herein, Defendant, Cindy Wenhart ("Wenhart"), was an employee and supervisor of Defendant Wal-Mart, whose address was, and is, 2887 South Arlington Road, Akron, Ohio 44312.

10. Defendant, Francis Benny Cameron ("Cameron"), is a U.S. citizen residing in Summit County, Ohio. At all relevant times, Cameron was an employee of Defendant Wal-Mart.

11. During all relevant times herein, Defendant Does were, and are, individuals, persons, corporations, partnerships, governmental agencies and entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Intervenors-Plaintiffs or their attorneys and which in some manner presently unknown to Intervenors-Plaintiffs may be liable to Intervenors-Plaintiffs, contractually, vicariously, tortiously, jointly and/or severally. Intervenors-Plaintiffs will be obtaining updated reports, as to identity, liability, existence of additional claims and/or causes of action or

4

otherwise, in connection with or in addition to the claim or claims herein. Intervenors-Plaintiffs reserve the right to plead Defendant Does as party defendants and/or plead additional claims to this action once their identities, capacities, activities, liabilities and claims or causes of action become known.

12. Wal-Mart is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of the twenty-one or more calendar weeks in the current or preceding year, and during all times alleged herein, within the meaning of 42 U.S.C.§ 2000e(b).

## JURISDICTION AND VENUE

13. This Court has jurisdiction in this case pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 § 2000 et seq. and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and jurisdiction is based on 28 U.S.C. § 1331 as it involves a matter arising under the Constitution and laws of the United States, and has supplemental jurisdiction based on28 U.S.C. § 1367 over the other related state law claims set forth herein.

14. Defendant Wal-Mart qualifies as an employer under Title VII of the Civil Rights Act of 1964, as amended, 42 § 2000 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Ohio Revised Code Chapter 4112.

15. Wal-Mart presently, and regularly, conducts affairs and business activities throughout northeastern Ohio and did so at all times alleged herein.

16. This Court may exercise personal jurisdiction over Wal-Mart based upon its contacts with this forum, including, at least, regularly and intentionally doing business here.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391, given the acts and omissions giving rise to this action occurred in the Northern District of Ohio, Eastern Division.

18. Intervenors-Plaintiffs state that all other jurisdictional requirements have been met.

19. On November 30, 2011, Jamie Wells, through her Legal Guardian, Barbara M. Wells, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to disparate treatment and a hostile work environment because of her sex and disability, and retaliation following, and because of her engagement in protected activity, all in violation of Title VII and the ADA.

20. The EEOC investigated Ms. Well's Charges.

21. On June 27, 2012, the EEOC issued a Determination as to the Charge, notifying Wal-Mart that there was reasonable cause to believe that it had violated Title VII and the ADA through adverse employment actions, based on her sex and disability, and by retaliating against Ms. Wells based upon her engaging in protected activities.

22. The EEOC then endeavored to remedy the unlawful employment practices through conciliation on behalf of J. Wells. After these efforts were unsuccessful, the EEOC so notified Defendant Wal-Mart and proceeded with the commencement of a lawsuit.

23. On April 10, 2013, the EEOC initiated a civil action in this Court against Wal-Mart for Hostile Work Environment in violation of Title VII, Retaliation in violation of Title VII, and Failure to Make Reasonable Accommodations in Violation of the ADA.

24. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims arising under Ohio Revised Code, Chapter 4112 because the claims asserted are so related to the Title VII and ADA claims upon which this Court has original jurisdiction under 28 U.S.C. § 1331, that they form part of the same case or controversy under Article III of the United States Constitution.

25. Ms. Wells has fully exhausted her administrative remedies as required by Title VII and the ADA.

## STATEMENT OF THE FACTS

26. During all relevant times herein, transactions and occurrences alleged in this Complaint took place in Summit County, Ohio.

27. At all relevant times, Jamie Wells was disabled as defined by the ADA, she was meeting Wal-Mart's legitimate job expectations, and she was qualified to perform the essential functions of her job with or without reasonable accommodations.

   a. Jamie Wells has suffered from developmental disabilities since birth. As a result of her disability, J. Wells' intellectual, social, and emotional functioning remain at a child's level.

   b. As a result of her disability, J. Wells is substantially limited in major life activities, including but not limited to caring for herself, speaking, learning, reading, concentrating, thinking, communicating, as well as in neurological and brain function.

   c. As a result of her disability, J. Wells has a record of an impairment that substantially limits her in major life activities, including but not limited to caring for herself, speaking, learning, reading, concentrating, thinking, communicating, as well as neurological and brain function.

28. J. Wells has received special services since childhood due to developmental disabilities.

29. Clinical Psychologist, Robin Tener, and Psychology Assistant, Carrie Schnirring, described J. Wells as "essentially a young child who is physically an adult.  However, there is no "adult" aspect or functioning, intellectually, academically, emotionally, or

7

socially.  She is highly dependent on her mother and is a trusting individual who has extremely limited comprehension."

30. Clinical Psychologist, Robin Tener, and Psychology Assistant, Carrie Schnirring, determined that J. Wells' ability to "consent" can only be viewed as similar to the degree of "consent" that could be provided by a young child who is manipulated into behavior by an adult.

31. On or about June 1, 1999, Defendant Wal-Mart employed J. Wells as an Associate in the Lawn and Garden Department at Store #1911 in Akron, Ohio via the County of Summit Developmental Disabilities Board.

32. The County of Summit Developmental Disabilities Board assisted J. Wells in her job application to Wal-Mart.

33. During J. Wells' entire employment with Wal-Mart she was assigned a job coach, Ken Berg ("Berg"), Employment Specialist, from the County of Summit Developmental Disabilities Board.

34. Berg made frequent visits to the Wal-Mart store to check on J. Wells' wellbeing and to assist Wal-Mart in any aspects of her employment.

35. Jamie Wells worked as an Associate in the Lawn & Garden Department at Store #1911 for more than eleven years. Her job performance was satisfactory.

36. J. Wells did not have a legal guardian during her employment with Wal-Mart.

37. During her employment with Wal-Mart, J. Wells' disability prevented her from managing her personal and legal affairs.

38. During her employment with Wal-Mart, J. Wells' disability prevented her from understanding her legal rights and acting upon them.

39. Sometime in 2005, J. Wells' started to exhibit behavioral changes, such as increased anger and irritability.

40. During the course of J. Wells' employment, a coworker, Francis Benny Cameron, repeatedly had unauthorized, nonconsensual and harmful sexual and physical contact with J. Wells.

41. In April 2005, Wal-Mart gave J. Wells a Decision-Making Day Coaching after Wal-Mart determined that she had engaged in inappropriate conduct with Cameron.

42. On or about December 15, 2010, J. Wells reported Cameron's sexual harassment to Wal-Mart managers.

43. On or about December 18, 2010, Wal-Mart terminated Cameron's employment.

44. Cameron and his attorney visited the Wal-Mart store in January 2011 to complain that he was wrongfully terminated.

45. On or about January 7, 2011, Wal-Mart terminated J. Wells' employment.

46. Intervenors-Plaintiffs immediately filed a police report against Cameron with the Springfield Township Police Department.

47. Cameron admitted to the police that he had sexual contact with J. Wells.

48. Cameron plead guilty to gross sexual imposition.

49. On March 25, 2011, J. Wells was diagnosed as having Posttraumatic Stress Disorder (PTSD).

**<u>FIRST CAUSE OF ACTION</u>**
**(Title VII Hostile Work Environment against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their Official Capacities Only)**

50. Intervenors-Plaintiffs incorporate the Statement of the Facts into the First Cause of Action, as if fully rewritten herein.

9

51. 42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... ; or (2) to limit, segregate, or classify his employees ...in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex."

52. J. Wells is a member of a protected class, that is, women.

53. Defendant Wal-Mart is an employer as defined by 42 U.S.C. § 2000e, et seq.

54. Beginning on or before April 2005 and continuing until January 7, 2011, Wal-Mart, Wenhart, Smith, Spradlin, and Cameron engaged in unlawful employment practices at its store #1911 in Akron, Ohio, in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000e-(2)(a)(1). The unlawful employment practice includes, but is not limited to, the following:

   a. Wal-Mart, Wenhart, Smith, Spradlin, and Cameron engaged in sex discrimination against Jamie Wells by subjecting her to severe or pervasive harassment because of her sex, and by creating and maintaining a hostile work environment because her sex;

   b. Wal-Mart, Wenhart, Smith, Spradlin, and Cameron allowed sexual misconduct to be perpetrated upon J. Wells by a co-worker, Francis Cameron. The sexual misconduct included inappropriate touching of Jamie Wells by Cameron, including his touching her breasts and genitals.

   c. Cameron's sexual misconduct towards J. Wells occurred on the premises of Wal-Mart Store #1911, in open areas, within view of employees and supervisors, was

10

recorded on surveillance footage which was routinely reviewed by Wal-Mart officials, over the course of approximately five years. J. Wells notified management officials of Cameron's sexual misconduct towards her. Wal-Mart, Wenhart, Smith, Spradlin, and Cameron knew or should have known of this conduct from at least April 2005.

d.  Wal-Mart, Wenhart, Smith, Spradlin, and Cameron failed to take prompt or effective action to prevent, correct or remedy the sexually hostile work environment. The abdication by Wal-Mart of its legal duties towards J. Wells, and its sex-based discrimination against her, culminated in its terminating her employment in response to her complaint of sexual misconduct by Cameron.

55. The effect of the practice complained of in paragraphs 53(a) through (d) was to deprive J. Wells of equal employment opportunities on the basis of sex, and to otherwise adversely affect her status as an employee because of her sex.

56. The unlawful employment practice complained of in paragraphs 53(a) through (d) was intentional.

57. The unlawful employment practice complained of in paragraphs 53(a) through (d) was done with malice or reckless indifference to J. Wells' federally protected rights.

58. These violations by Defendants were based upon J. Wells' sex, and affected the terms, conditions, and/or privileges of J. Wells' employment.

59. As a direct and proximate result of the unlawful conduct of Defendants, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and

inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

60. In addition, J. Wells has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action.

61. The actions of Defendants are clearly a violation of Title VII of the Civil Rights Act of 1964, as amended.

62. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 § 2000 et seq., compensatory damages of $300,000, punitive damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

## SECOND CAUSE OF ACTION
### (Gender Discrimination under Ohio Revised Code Chapter 4112)

63. Intervenors-Plaintiffs incorporate the Statement of the Facts and the First Cause of Action into the Second Cause of Action, as if fully rewritten herein.

64. Ohio Revised Code Section 4112.02 provides that it is an unlawful discriminatory practice for "any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

12

65. J. Wells is a member of a protected class, that is, women.

66. Defendant Wal-Mart is an employer within the meaning of R.C. 4112.01.

67. J. Wells was subjected to unwelcome harassment by Defendant Cameron while employed by Defendant Wal-Mart.

68. The unwelcome acts were directed at J. Wells on account of her gender.

69. Beginning on or before April 2005 and continuing until January 7, 2011, Wal-Mart, Wenhart, Smith, Spradlin, and Cameron engaged in unlawful employment practices at its store #1911 in Akron, Ohio, in violation of R.C. §4112.02. The unlawful employment practice includes, but is not limited to, the following:

   a. Wal-Mart, Wenhart, Smith, Spradlin, and Cameron engaged in sex discrimination against Jamie Wells by subjecting her to severe or pervasive harassment because of her sex, and by creating and maintaining a hostile work environment because her sex;

   b. Wal-Mart, Wenhart, Smith, Spradlin, and Cameron allowed sexual misconduct to be perpetrated upon J. Wells by a co-worker, Francis Cameron. The sexual misconduct included inappropriate touching of Jamie Wells by Cameron, including his touching her breasts and genitals.

   c. Cameron's sexual misconduct towards J. Wells occurred on the premises of Wal-Mart Store #1911, in open areas, within view of employees and supervisors, was recorded on surveillance footage which was routinely reviewed by Wal-Mart officials, over the course of approximately five years. J. Wells notified management officials of Cameron's sexual misconduct towards her. Wal-Mart,

13

Wenhart, Smith, Spradlin, and Cameron knew or should have known of this conduct from at least April 2005.

d.  Wal-Mart, Wenhart, Smith, Spradlin, and Cameron failed to take prompt or effective action to prevent, correct or remedy the sexually hostile work environment. The abdication by Wal-Mart of its legal duties towards J. Wells, and its sex-based discrimination against her, culminated in its terminating her employment in response to her complaint of sexual misconduct by Cameron.

70. The effect of the practice complained of in paragraphs 68(a) through (d) was to deprive J. Wells of equal employment opportunities on the basis of sex, and to otherwise adversely affect her status as an employee because of her sex.

71. The unlawful employment practice complained of in paragraphs 68(a) through (d) was intentional.

72. The unlawful employment practice complained of in paragraphs 68(a) through (d) was done with malice or reckless indifference to J. Wells' federally protected rights.

73. These violations by Defendants were based upon J. Wells' sex, and affected the terms, conditions, and/or privileges of J. Wells' employment.

74. Because of the unwelcomed acts, J. Wells was forced to work in a hostile, abusive work environment which, because of its pervasiveness and severity, interfered with her ability to perform her duties.

75. Defendants were aware that unwelcome sexual harassment was occurring due to the open and notorious nature of the harassment, and did not take sufficient action to stop the harassment or prevent future harassment.

14

76. Because of the unwelcome sexual harassment and gender discrimination, J. Wells has suffered severe, traumatic emotional injury.

77. As a direct and proximate result of Defendants' unlawful conduct, J. Wells has suffered and will continue to suffer loss of income and employee benefits, mental anguish, emotional distress, embarrassment and other damages. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

78. Defendants' conduct violates Ohio Revised Code § 4112.02, and Plaintiffs are entitled to judgment pursuant to Ohio Revised Code § 4112.99.

79. WHEREFORE, Intervenors-Plaintiffs demand for violation of R.C. § 4112 Disability Discrimination, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

### THIRD CAUSE OF ACTION
**(Failure to Make Reasonable Accommodation in Violation of the ADA against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their Official Capacities Only)**

80. Intervenors-Plaintiffs incorporate the Statement of Facts, First Cause of Action, and Second Cause of Action into the Third Cause of Action, as if fully rewritten herein.

81. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, as amended, et seq., prohibits a covered entity from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

82. At all relevant times, J. Wells was a qualified individual with a disability as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8). At all relevant times, J. Wells was Defendant Wal-Mart's employee or applicant, as defined by 42 U.S.C. § 12111(4).

83. As a result of her developmental disability, J. Wells at all relevant times was an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1)(A)-(B), (2).

84. Defendants knew of J. Wells' disability and need for supervision.

85. Wal-Mart is a covered entity as defined by 42 U.S.C. § 12111(2).

86. Defendants discriminated against J. Wells in regard to job application procedures, hiring, advancement, or discharge, compensation, job training, and/or other terms, conditions, and privileges of employment based on her disability, perceived disability, and/or record of disability.

87. Beginning in or before April 2005 and continuing until January 7, 2011, Defendants discriminated against J. Wells on the basis of her disability in violation of Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), by failing to accommodate her disability. This unlawful discrimination included, but is not limited to, the following:

    a.  failing to provide J. Wells with adequate training, supervision, assessment, support, guidance, education, and/or counseling regarding Wal-Mart's anti-harassment policy and appropriate physical contact between employees;

    b.  failing to provide timely and effectively communication with J. Wells' job coach and/or other appropriate persons about the sexually inappropriate conduct to which Wells had been subjected as a Wal-Mart employee.

16

    c.  failing to modify its anti-harassment policies to accommodate J. Wells'
developmental disability and, instead, terminating her under those policies
without providing the accommodations described in subsections (a)-(c).

88. The effect of the unlawful discrimination complained of in paragraphs 86(a) through (c)
has been to deprive J. Wells, a qualified individual under the ADA, of equal employment
opportunities on the basis of her disability.

89. The unlawful discrimination complained of in paragraphs 86(a) through (c) was
intentional.

90. The unlawful discrimination complained of in paragraphs 86(a) through (c) was done
with malice or reckless indifference to J. Wells' federally protected rights.

91. As a result of Defendants' unlawful conduct, J. Wells has suffered and will continue to
suffer loss of income and employee benefits, mental anguish, emotional distress,
embarrassment and other damages. Intervenors-Plaintiffs are also entitled to attorneys'
fees and costs incurred in connection with this claim.

92. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title I of the Americans
with Disabilities Act of 1990, as amended, compensatory damages of $300,000, punitive
damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other
relief this Court may deem is fair and equitable against Defendant Wal-Mart and
Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

## FOURTH CAUSE OF ACTION
**(Harassment and Hostile Work Environment in Violation of the Americans with Disabilities Act against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their Official Capacities Only)**

93. Intervenors-Plaintiffs incorporate the Statement of Facts, First Cause of Action, Second Cause of Action, and Third Cause of Action into the Fourth Cause of Action, as if fully rewritten herein.

94. Wal-Mart subjected J. Wells to a hostile work environment and harassment in whole or in part because of her disability, because Wal-Mart regarded her as having a disability, or a record of a disability, in violation of the ADA, 42 U.S.C. § 12112.

95. At all relevant times, J. Wells was a qualified individual with a disability as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8) and able to perform the essential functions of her job as an Associate. At all relevant times, J. Wells was Defendant Wal-Mart's employee or applicant, as defined by 42 U.S.C. § 12111(4).

96. As a result of her developmental disability, J. Wells at all relevant times was an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1)(A)-(B), (2).

97. Defendants knew of J. Wells' disability and need for supervision.

98. Wal-Mart is a covered entity as defined by 42 U.S.C. § 12111(2).

99. J. Wells was subjected to unwelcome harassment by Defendant Cameron while employed by Defendant Wal-Mart.

100. The unwelcome acts were directed at J. Wells on account of her disability.

101. Because of the unwelcomed acts, J. Wells was forced to work in a hostile, abusive work environment which, because of its pervasiveness and severity, interfered with her ability to perform her duties.

102. Defendants were aware that unwelcome harassment was occurring due to the open and notorious nature of the harassment, and did not take sufficient action to stop the harassment or prevent future harassment.

103. J. Well's disability was a motivating factor in Defendants' decision to allow the unwelcome harassment to continue.

104. The unlawful discrimination was done with malice or reckless indifference to J. Wells' protected rights.

105. Because of the unwelcome harassment and disability discrimination, J. Wells has suffered severe, traumatic emotional injury.

106. As a direct and proximate result of these unlawful acts by Defendants, J. Wells has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain, suffering, humiliation, and emotional distress. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

107. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title I of the Americans with Disabilities Act of 1990, as amended, compensatory damages of $300,000, punitive damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

**FIFTH CAUSE OF ACTION**
**(Disparate Treatment in Violation of the Americans with Disabilities Act against**
**Defendant Wal-Mart and Defendants  Spradlin, Smith, Wenhart, and Cameron**
**in their Official Capacities Only)**

108. Intervenors-Plaintiffs incorporate the Statement of Facts, First Cause of Action, Second Cause of Action, Third Cause of Action, and Fourth Cause of Action into the Fifth Cause of Action, as if fully rewritten herein.

109. At all relevant times, J. Wells was a qualified individual with a disability as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8) and able to perform the essential functions of her job as an Associate. At all relevant times, J. Wells was Defendant Wal-Mart's employee or applicant, as defined by 42 U.S.C. § 12111(4).

110. As a result of her developmental disability, J. Wells at all relevant times was an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1)(A)-(B), (2).

111. Defendants knew of J. Wells' disability and need for supervision.

112. Wal-Mart is a covered entity as defined by 42 U.S.C. § 12111(2).

113. Defendants subjected J. Wells to different terms and conditions of her employment based on her disability, in violation of the ADA, 42 U.S.C. § 12112.

114. J. Wells was subjected to unwelcome harassment by Defendant Cameron while employed by Defendant Wal-Mart.

115. The unwelcome acts were directed at J. Wells on account of her disability.

116. Defendants were aware that unwelcome harassment was occurring due to the open and notorious nature of the harassment, and did not take sufficient action to stop the harassment or prevent future harassment.

117. J. Well's disability was a motivating factor in Defendants' decision to allow the unwelcome harassment to continue.

118. J. Well's disability was a motivating factor in Defendants' decision to terminate her employment.

119. The unlawful discrimination was done with malice or reckless indifference to J. Wells' protected rights.

120. Because of the unwelcome harassment and disparate treatment, J. Wells has suffered severe, traumatic emotional injury.

121. As a direct and proximate result of these unlawful acts by Defendant, J. Wells has suffered and continues to suffer lost wages, benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

122. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title I of the Americans with Disabilities Act of 1990, as amended, compensatory damages of $300,000, punitive damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

## SIXTH CAUSE OF ACTION
### (Disability Discrimination under Ohio Revised Code Chapter 4112)

123. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, and the Third Cause of Action, Fourth Cause of Action, and Fifth Cause of Action, into the Sixth Cause of Action, as if fully rewritten herein.

124. Ohio Revised Code Section 4112.02 provides that it is an unlawful discriminatory practice for "any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

125. Defendant Wal-Mart is an employer within the meaning of R.C. §4112.01.

126. J. Wells is disabled within the meaning of R.C. §4112.

127. J. Wells' developmental disability causes her to need constant supervision.

128. Defendants knew of J. Wells' disability and need for supervision.

129. Defendants knew J. Wells was unable to fend off inappropriate touching.

130. Defendants failed to take immediate action to protect J. Wells from Cameron, even after they were advised of his actions.

131. Because of the disability discrimination, J. Wells has suffered severe, traumatic emotional injury.

132. Defendants discriminated against J. Wells in regard to job application procedures, hiring, advancement, or discharge, compensation, job training, and/or other terms, conditions, and privileges of employment based on her disability, perceived disability, and/or record of disability.

133. Beginning in or before April 2005 and continuing until January 7, 2011, Defendants discriminated against J. Wells on the basis of her disability in violation of R.C. § 4112.01, by failing to accommodate her disability. This unlawful discrimination included, but is not limited to, the following:

    a.   failing to provide J. Wells with adequate training, supervision, assessment, support, guidance, education, and/or counseling regarding Wal-Mart's anti-harassment policy and appropriate physical contact between employees;

    b.   failing to provide timely and effectively communication with J. Wells' job coach and/or other appropriate persons about the sexually inappropriate conduct to which Wells had been subjected as a Wal-Mart employee.

    c.   failing to modify its anti-harassment policies to accommodate J. Wells' developmental disability and, instead, terminating her under those policies without providing the accommodations described in subsections (a)-(c).

134. The effect of the unlawful discrimination complained of in paragraphs132 (a) through (c) has been to deprive J. Wells, a disabled individual under R.C. 4112, of equal employment opportunities on the basis of her disability.

135. The unlawful discrimination complained of in paragraphs 132 (a) through (c) was intentional.

136. The unlawful discrimination complained of in paragraphs 132 (a) through (c) was done with malice or reckless indifference to J. Wells' protected rights.

137. As a result of Defendants' unlawful conduct, J. Wells has suffered and will continue to suffer loss of income and employee benefits, mental anguish, emotional distress, embarrassment and other damages. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

138. Defendants' conduct violates Ohio Revised Code § 4112.02, and Intervenors-Plaintiffs are entitled to judgment pursuant to Ohio Revised Code § 4112.99.

139. WHEREFORE, Intervenors-Plaintiffs demand for violation of R.C. 4112 Disability Discrimination, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

### SEVENTH CAUSE OF ACTION
**(Retaliation under Title VII against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their Official Capacities Only)**

140. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, Fourth Cause of Action, Fifth Cause of Action, and Sixth Cause of Action into the Seventh Cause of Action, as if fully rewritten herein.

141. 42 U.S.C. § 2000e-3 provides that it is an unlawful employment practice for an employer to "discriminate against any individual ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

142. Defendant Wal-Mart, by and through its employees, agents, and officers, including supervisory employees intentionally, willfully, and wantonly retaliated against J. Wells because of her complaints of the unlawful hostile work environment sexual harassment, in that, after complaining of sexual harassment in violation of Title VII, J. Wells was subjected to unfair and arbitrary treatment and interference with the terms, conditions and/or privileges of her employment, all as alleged above.

143. The actions and/or activities of Defendants Wal-Mart, Wenhart, Smith, Spradlin, and Cameron constitute retaliation for J. Wells' complaints of hostile work environment sexual harassment, and are in violation of Title VII of the 1964 Civil Rights Act.

24

144. Since December 2010 and continuing until January 2011, Defendants engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). Specifically, Defendants subjected Wells to materially adverse employment actions because she opposed its discriminatory practices. Defendants' retaliatory actions include, but are not limited to, terminating J. Wells' employment on January 7, 2011. The termination of J. Wells occurred three weeks after she complained to a Wal-Mart manager that a male co-worker was touching her in a sexual manner.

145. The effect of the unlawful employment practices complained of in paragraph 143 was to deprive J.  Wells of equal employment opportunities on the basis of her protected activity in opposition to a sex-based hostile work environment.

146. The unlawful employment practices complained of in paragraph 143 were intentional.

147. The unlawful employment practices complained of in paragraph 143 were done with malice or reckless indifference to Wells' federally protected rights.

148. As a direct and proximate result of the unlawful retaliation by Defendants Wal-Mart Wenhart, Smith, Spradlin, and Cameron, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

149. In addition, J. Wells has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action. Intervenors-Plaintiffs are entitled to attorneys' fees and costs incurred in connection with this claim.

25

150. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 § 2000 et seq., compensatory damages of $300,000, punitive damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

## EIGHTH CAUSE OF ACTION
**(Retaliation under the ADA against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their Official Capacities Only)**

151. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, and the Seventh Cause of Action into the Eighth Cause of Action, as if fully rewritten herein.

152. Defendant Wal-Mart, by and through its employees, agents, and officers, including supervisory employees intentionally, willfully, and wantonly retaliated against J. Wells because of her complaints of the unlawful work environment, in that, after complaining of harassment in violation of the ADA, 42 U.S.C. § 12203(a), J. Wells was subjected to unfair and arbitrary treatment and interference with the terms, conditions and/or privileges of her employment, all as alleged above.

153. The actions and/or activities of Defendants Wal-Mart, Wenhart, Smith, Spradlin, and Cameron constitute retaliation for J. Wells' complaints of a hostile work environment, and are in violation of the ADA, 42 U.S.C. § 12203(a).

154. Since December 2010 and continuing until January 2011, Defendants engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12203(a). Specifically, Defendants subjected Wells to materially adverse employment actions

26

because she opposed its discriminatory practices. Defendants' retaliatory actions include, but are not limited to, terminating J. Wells' employment on January 7, 2011. The termination of J. Wells occurred three weeks after she complained to a Wal-Mart manager that a male co-worker was touching her in a sexual manner.

155. The effect of the unlawful employment practices complained of in paragraph 153 was to deprive J. Wells of equal employment opportunities on the basis of her protected activity in opposition to a non-discriminatory work environment.

156. The unlawful employment practices complained of in paragraph 153 were intentional.

157. The unlawful employment practices complained of in paragraph 153 were done with malice or reckless indifference to Wells' federally protected rights.

158. The acts, omissions and behavior of Defendants as set forth above constitute discrimination on the basis of retaliation in violation of the ADA, 42 U.S.C. § 12203(a).

159. As a direct and proximate result of the unlawful retaliation by Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

160. In addition, J. Wells has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

161. WHEREFORE, Intervenors-Plaintiffs demand for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 § 2000 et seq., compensatory damages of $300,000, punitive damages of $300,000, reinstatement, attorneys' fees, costs, injunctive relief and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron in their official capacities only.

## NINTH CAUSE OF ACTION
### (Retaliation under Ohio Revised Code Chapter 4112)

162. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, and the Eighth Cause of Action into the Ninth Cause of Action, as if fully rewritten herein.

163. J. Wells engaged in a protected activity when she complained of sexual harassment to Defendant Wal-Mart.

164. Defendants had knowledge of J. Wells' protected activity.

165. Defendants retaliated against J. Wells when they terminated her from her employment.

166. Defendant Wal-Mart, by and through its employees, agents, and officers, including supervisory employees intentionally, willfully, and wantonly retaliated against J. Wells because of her complaints of the unlawful work environment, in that, after complaining of harassment in violation of R.C. 4112, J. Wells was subjected to unfair and arbitrary treatment and interference with the terms, conditions and/or privileges of her employment, all as alleged above.

167. The actions and/or activities of Defendants Wal-Mart, Wenhart, Smith, Spradlin, and Cameron constitute retaliation for J. Wells' complaints of a hostile work environment, and are in violation of R.C. 4112.

168. Since December 2010 and continuing until January 2011, Defendants engaged in unlawful employment practices in violation of R.C. 4112. Specifically, Defendants subjected J. Wells to materially adverse employment actions because she opposed its discriminatory practices. Defendants' retaliatory actions include, but are not limited to, terminating J. Wells' employment on January 7, 2011. The termination of J. Wells occurred three weeks after she complained to a Wal-Mart manager that a male co-worker was touching her in a sexual manner.

169. The effect of the unlawful employment practices was to deprive J.  Wells of equal employment opportunities on the basis of her protected activity in opposition to a non-discriminatory work environment.

170. The unlawful employment practices were intentional.

171. The unlawful employment practices were done with malice or reckless indifference to J. Wells' protected rights.

172. The acts, omissions and behavior of Defendants as set forth above constitute discrimination on the basis of retaliation in violation of R.C. 4112.

173. The actions of Defendants are a violation of R.C. 4112, which prohibits any type of retaliation as a result of engaging in a protected activity.

174. As a direct and proximate result of the unlawful retaliation by Defendant Wal-Mart and Defendants Spradlin, Smith, Wenhart, and Cameron, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of

career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial. Intervenors-Plaintiffs are also entitled to attorneys' fees and costs incurred in connection with this claim.

175. WHEREFORE, Intervenors-Plaintiffs demand that the Defendants in their official and individual capacity, for 4112 violation, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## TENTH CAUSE OF ACTION
### (Wrongful Termination)

176. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, and the Ninth Cause of Action into the Tenth Cause of Action, as if fully rewritten herein.

177. There is an existence of a clear public policy embodied in Ohio Statutory provisions and/or Ohio's common law against wrongful termination in which the termination of the employee jeopardizes said public policy, was motivated by conduct related to said public policy and where the employer lacks an overriding legitimate business reason for the wrongful termination.

178. Defendants wrongfully terminated J. Wells' employment without overriding business justification, in violation of law and public policy, causing Plaintiff J. Wells great harm and damages.

179. As a direct and proximate result of the foregoing, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury.

180. WHEREFORE, Intervenors-Plaintiffs demand for Wrongful Termination, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## ELEVENTH CAUSE OF ACTION
### (Assault)

181. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, and the Tenth Cause of Action into the Eleventh Cause of Action, as if fully rewritten herein.

182. Defendant Cameron touched J. Wells against her will and purposely, knowingly, recklessly, and wrongfully touched and manhandled J. Wells by touching her body and by approaching her in a manner calculated to cause reasonable apprehension of bodily harm.

183. Defendant Cameron caused J. Wells to be kissed against her will.

184. Defendant Cameron's acts were intended to harm J. Wells and such touching and threatening behavior was both harmful and offensive to J. Wells.

185. Defendant Cameron's acts were both the actual and proximate cause of J. Wells' injury and damages.

186. The conduct of Defendant Cameron caused J. Wells to be in reasonable apprehension of offensive conduct and thereby constituted an assault.

187. Defendants are vicariously liable for Cameron's actions.

188. WHEREFORE, Intervenors-Plaintiffs demand for Assault, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## TWELFTH CAUSE OF ACTION
### (Battery)

189. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, and the Eleventh Cause of Action into the Twelfth Cause of Action, as if fully rewritten herein.

190. Defendant Cameron touched J. Wells against her will and consent when he grabbed her buttocks, kissed her, and had sexual relations with her.

191. Defendant Cameron caused J. Wells to be wrongfully and painfully touched.

192. Defendant Cameron's acts were intended to touch J. Wells and such touching was both harmful and offensive to J. Wells.

193. Defendant Cameron's acts were both the actual cause and the proximate cause of J. Wells' injury and damages.

194. Defendants are vicariously liable for Cameron's actions.

195. WHEREFORE, Intervenors-Plaintiffs demand for Battery, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

**THIRTEENTH CAUSE OF ACTION**
**(Negligent Hire)**

196. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, and the Twelfth Cause of Action into the Thirteenth Cause of Action, as if fully rewritten herein.

197. Defendant Wal-Mart, failed to properly screen Defendant Cameron before hiring, and further failed to supervise Cameron adequately; thereby, allowing Cameron to be a predator, injuring and damaging J. Wells.

198. Defendant Cameron was incompetent.

199. Defendant Wal-Mart had actual or constructive knowledge of Defendant Cameron's incompetence.

200. Defendant Cameron's acts caused J. Wells' injuries, and Defendant Wal-Mart's negligence in hiring Cameron was the proximate cause of J. Wells' injuries.

201. WHEREFORE, Intervenors-Plaintiffs demand for Negligent Hire, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## FOURTEENTH CAUSE OF ACTION
### (Negligent Supervision and Retention)

202. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, the Twelfth Cause of Action, and the Thirteenth Cause of Action into the Fourteenth Cause of Action, as if fully rewritten herein.

203. Cameron was incompetent and not properly supervised.

204. J. Wells, an incompetent, was not properly supervised.

205. Defendants had actual or constructive knowledge of Cameron's incompetence.

206. Defendants had actual or constructive knowledge of J. Wells' incompetence.

207. Cameron's acts caused J. Wells' injuries, and Defendants' negligence in retaining Cameron was the proximate cause of Plaintiff J. Wells' injuries.

208. Defendants failed to take immediate action against Cameron.

209. Defendants' acts and/or omissions caused J. Wells' injuries, and Defendants' negligence in lack of the proper supervision of J. Wells and Cameron was the proximate cause of J. Wells' injuries.

210. WHEREFORE, Intervenors-Plaintiffs demand for Negligent Supervision and Retention, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## FIFTEENTH CAUSE OF ACTION
### (Negligence)

211. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, the Twelfth Cause of Action, the Thirteenth Cause of Action, and the Fourteenth Cause of Action into the Fifteenth Cause of Action, as if fully rewritten herein.

212. Defendants' actions constitute gross negligence.

213. Defendants owed a legal duty of care to keep J. Wells safe from harm.

214. Defendants failed to exercise ordinary care when they caused J. Wells' harm; such failure to exercise ordinary care was negligence on the part Defendants.

215. Defendants knew or should have known that their conduct would, and, in this case, did, directly and proximately cause damages and extensive personal injuries to J. Wells.

216. As a direct and proximate result of Defendants' said actions, J. Wells sustained severe and permanent personal injuries and incurred and will continue to incur pain and suffering, medical bills, lost wages and severe emotional distress and anxiety.

217. Defendants have demonstrated willful, wanton and malicious behavior, entitling Plaintiffs to punitive damages.

218. WHEREFORE, Intervenors-Plaintiffs demand for Negligence, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## SIXTEENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

219. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, the Twelfth Cause of Action, the Thirteenth Cause of Action, the Fourteenth Cause of Action, and the Fifteenth Cause of Action into the Sixteenth Cause of Action, as if fully rewritten herein.

220. Defendants had a fiduciary relationship with J. Wells to insure that she was protected from harm.

221. The fiduciary relationship arose when Defendants contracted with Summit County Board of DD to employ J. Wells, an incompetent.

36

222. Defendants breached the above-described duty by failing to protect J. Wells, an incompetent, from harm.

223. As a direct and proximate result of the foregoing, J. Wells has suffered, and will in the future suffer, great damages including front pay, back pay, medical expenses, loss of career opportunities, promotions and advancements, loss of retirement benefits, loss of fringe benefits, embarrassment, humiliation, and inconvenience, severe mental anguish, stress, and pain and suffering, loss of enjoyment of life and other nonpecuniary injury.

224. WHEREFORE, Intervenors-Plaintiffs demand for Breach of Fiduciary Duty, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

### SEVENTEENTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

225. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, the Twelfth Cause of Action, the Thirteenth Cause of Action, the Fourteenth Cause of Action, the Fifteenth Cause of Action, and the Sixteenth Cause of Action into the Seventeenth Cause of Action, as if fully rewritten herein.

226. Defendants, by their conduct described herein, intended to cause J. Wells severe emotional distress.

227. Defendants intended their specific conduct and knew, or should have known, that their conduct would likely result in severe emotional distress.

228. Defendants' conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality.

229. As a direct result of Defendants' actions which are described herein, J. Wells was frequently reduced to tears, lost sleep, trembled, and was nervous and distraught. As a direct and proximate result of Defendants' conduct described herein, J. Wells has suffered and continues to suffer severe emotional distress, including but not limited to humiliation, embarrassment, and indignity to her feelings.

230. WHEREFORE, Intervenors-Plaintiffs demand for Intentional Infliction of Emotional Distress, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against all Defendants.

## EIGHTEENTH CAUSE OF ACTION
### (Respondeat Superior)

231. Intervenors-Plaintiffs incorporate the Statement of the Facts, the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, the Seventh Cause of Action, the Eighth Cause of Action, the Ninth Cause of Action, the Tenth Cause of Action, the Eleventh Cause of Action, the Twelfth Cause of Action, the Thirteenth Cause of Action, the Fourteenth Cause of Action, the Fifteenth Cause of Action, the Sixteenth Cause of Action, and the Seventeenth Cause of Action into the Eighteenth Cause of Action, as if fully rewritten herein.

232. The acts and omissions by Defendant Wal-Mart's employees were within the course of scope of the employees' employment; as such, the acts and omissions were the acts and omissions of Defendant Wal-Mart under the theory of respondeat superior.

233. As the employees' employer, Defendant Wal-Mart is vicariously liable for all damages caused by the acts and omissions of its employees, jointly and severally with said employees.

234. WHEREFORE, Intervenors-Plaintiffs demand for Respondeat Superior, compensatory damages of $1,000,000, punitive damages of $1,000,000, reinstatement, attorneys' fees, costs, injunctive relief, and any other relief this Court may deem is fair and equitable against Defendant Wal-Mart.

Respectfully submitted,

LOUIS J. GIGLIOTTI, JR. (0055696)
*Attorney for Intervenors-Plaintiffs*
2745 Nesbitt Avenue
Akron, Ohio 44319-1068
(330) 745-2175
(330) 745-4059 FAX
lougigliotti72@yahoo.com

THOMAS P. CONWAY (0051974)
*Attorney for Intervenors-Plaintiffs*
2745 Nesbitt Avenue
Akron, Ohio 44319-1068
(330) 745-2175
(330) 745-4059 FAX
TC@lhhcelaw.com

*/s/ Tracee D. Hilton-Rorar*
TRACEE D. HILTON-RORAR (0082431)
*Attorney for Intervenors-Plaintiffs*
3465 S. Arlington Road, Suite E136
Akron, Ohio 44312
(330) 319-5143;   (215) 689-9363 FAX
thr@hiltonrorarlaw.com

## JURY DEMAND

The Intervenors-Plaintiffs hereby demand a trial by jury with the maximum number of jurors permitted by law for all claims in this action.

*/s/ Tracee D. Hilton-Rorar*
Tracee D. Hilton-Rorar
Attorney at Law